759 So.2d 1066 (2000)
YARNELL ICE CREAM COMPANY and Fireman's Fund Insurance Company, Plaintiffs-Appellees,
v.
James Gregg ALLEN, Defendant-Appellant.
No. 33,020-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*1068 Street & Street by C. Daniel Street, Monroe, Counsel for Appellant.
Hurlburt, Privat & Monrose by M. Blake Monrose, Lafayette, Counsel for Appellees.
Richard P. Ieyoub, Attorney General, Counsel for Intervenor/ Appellee, State of Louisiana, Office of Workers' Compensation.
Before NORRIS, C.J., WILLIAMS & PEATROSS, JJ.
PEATROSS, J.
Defendant, James Gregg Allen, appeals a judgment finding that, subsequent to August 15, 1997, he willfully made false statements[1], constituting fraud, in violation of La. R.S. 23:1208, for the purpose of obtaining workers' compensation benefits, forfeiting any past, present or future rights to compensation; ordering him to make restitution to Plaintiffs, Yarnell Ice Cream Company ("Yarnell") and Fireman's Fund Insurance Company ("Fireman's") in the amount of $53,172.56, plus legal interest; ordering him to pay a civil penalty of $5,000 to Intervenor, the Department of Labor, Office of Workers' Compensation Administration ("the State"), to be paid into the Office of Workers' Compensation Administrative Fund ("OWCAF"); and ordering him to pay all costs of the proceedings. Plaintiffs, Yarnell and Fireman's, appeal those parts of the judgment denying them reimbursement for the cost or value of transportation expenses and reasonable costs of investigation and litigation of this matter in the amount of $13,684.66; awarding the civil penalty to the State instead of Plaintiffs; and the rulings of the Workers' Compensation Judge ("WCJ") during trial allowing Defendant to selectively invoke his constitutional right against self-incrimination and to invoke the attorney-client privilege regarding Defendant's former attorney, A.W. Block, Jr., relating to correspondence between Mr. Block and third parties. For the reasons stated herein, we affirm in part, amend in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
On October 9, 1995, Defendant was finishing his first day of employment with Yarnell when he allegedly slipped and fell while in the course and scope of said employment, allegedly injuring his back. Defendant informed his supervisor of the incident and went home. The following day, Defendant returned to work to seek permission for medical treatment from his supervisor. Defendant was referred to Dr. Tom Dansby at the Monroe Medical Clinic. On October 17, 1995, Defendant was referred to Dr. Douglas Brown, an orthopaedist. During his initial consultations with both Dr. Dansby and Dr. Brown, Defendant denied having any previous back injury or fracture. Defendant was later referred to Dr. Rifat Nawas, *1069 another orthopaedist, to whom Defendant also denied having any previous lower back injuries or pains prior to October 1995. On October 25, 1995, Sue Kaufman, an adjuster with Fireman's, took a recorded statement from Defendant in which he again denied having any prior back injury or related treatment.
An investigation by Fireman's later revealed that Defendant had injured his back on September 27, 1995, when he slipped and fell in the bathroom at Montgomery Ward. Defendant was injured badly enough that he had to be transported by ambulance to St. Francis Medical Center. He sought treatment for his back injury at the Shell Family Chiropractor ("the Shell Clinic") and continued that treatment prior to and during the time he was receiving treatment from Dr. Dansby and Dr. Brown for his alleged work-related injury at Yarnell. Plaintiffs produced certified medical records from Metro Ambulance, St. Francis Medical Center and the Shell Clinic corroborating this fact.[2]
Defendant did not inform anyone with the Shell Clinic that he had been injured on October 9, 1995, while working for Yarnell. He was released from treatment at the Shell Clinic on November 28, 1995, asymptomatic and was regarded as having reached full recovery status. Dr. Lopez, the chiropractor who treated Defendant at the Shell Clinic, testified at trial confirming the medical records of Defendant.
Plaintiffs also introduced into evidence the record of the suit Defendant filed against Montgomery Ward. In that suit, Defendant asserts that all of his back problems resulted from the slip and fall at Montgomery Ward on September 27, 1995. Plaintiffs further introduced into evidence Defendant's deposition and answers to interrogatories associated with the instant workers' compensation claim. In those discovery documents, Defendant denied having previous involvement in any personal injury lawsuits. Copies of previous lawsuits in which Defendant was involved, however, were also filed into evidence.
During trial, Defendant answered only those questions which were beneficial to his case, such as the fact that he was injured on the job with Yarnell. In response to all other questions, Defendant invoked his Fifth Amendment right against self-incrimination. Plaintiffs' objection that this privilege could not be selectively invoked was overruled. Plaintiffs also attempted to enter into evidence settlement demands, correspondence and the settlement agreement related to Defendant's suit against Montgomery Ward. Defendant's objection to the introduction of these documents, based on the attorneyclient privilege, was sustained by the WCJ. Plaintiffs proffered these documents.

DISCUSSION
Defendant's Assignment of Error No. 1: The WCJ erred in allowing the deposition of Sue Kauffman into evidence without a proper foundation being laid therefor.
Although Defendant does not appeal the WCJ's finding that he willfully made false statements for the purpose of obtaining workers' compensation benefits, in violation of La. R.S. 23:1208, he appeals the admission into evidence of the deposition of Sue Kauffman which was used to prove the false statements. Ms. Kauffman was employed with Fireman's as the senior workers' compensation adjuster at the time Defendant was allegedly injured at Yarnell, and she took Defendant's statement concerning the alleged injury.
Ms. Kauffman lived in Garland, Texas, and no longer worked for Fireman's at the time her deposition was taken. Defendant objected to the introduction of Ms. Kauffman's deposition at trial stating there was not ample proof that she was unavailable, *1070 as required by La. C.C.P. art. 1450, for the introduction of her deposition as opposed to live testimony. The WCJ, however, is afforded a relaxed standard with which to conduct trials and is not strictly bound to the rules of evidence and procedure. La. R.S. 23:1317. In addition, Plaintiffs' counsel specifically stated on the record that the deposition was being taken for purposes of trial and allowed no stipulations regarding objections, stating that they should all be made on the record for trial. Defendant's assignment, therefore, has no merit.
Defendant's Assignments of Error Nos. 2 & 3:
2) The WCJ erred in granting restitution to Plaintiffs for any false statements and, specifically, for any false statements allegedly made in October 1995, since the statute in effect at that time did not allow for any restitution.
3) The WCJ erred in allowing any restitution to Plaintiffs for any alleged false statements made in April 1998, where no benefits were paid as a result of any such alleged false statements.
La. R.S. 23:1208, as amended in the 1997 regular session, reads, in pertinent part, as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
B. It shall be unlawful for any person, whether present or absent, directly or indirectly, to aid and abet an employer or claimant, or directly or indirectly, counsel an employer or claimant to willfully make a false statement or representation.
C. (1) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of ten thousand dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or fined not more than ten thousand dollars, or both.
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
(3) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of less than two thousand five hundred dollars, shall be imprisoned for not more than six months or fined not more than five hundred dollars, or both.
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained", for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
Prior to the 1997 amendment, Subsection D read as follows:
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the director of not less than five hundred dollars nor more than five thousand dollars.
*1071 The amendment, thus, provided specifically for restitution to the employer, insurer or third party administrator.
It is Defendant's position that the addition to La. R.S. 23:1208 of the right of restitution cannot be applied retroactively because it is substantive in nature; and, therefore, the law in effect at the time the false statements were made should apply. Defendant cites Resweber v. Haroil Construction Co., 94-2708, 94-3138 (La.9/5/1995), 660 So.2d 7 in support of his position. In her reasons for judgment, the WCJ stated that the amended version of La. R.S. 23:1208 was applicable to the instant case because Defendant committed a continuing fraud that was perpetuated beyond the date of the amendment.
Appellate review of a question of law, which is de novo, is simply to determine whether the trial court was correct or incorrect in its application of the law. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-C-0690 (La.7/5/94), 640 So.2d 237; Conagra Poultry Co. v. Collingsworth, 30,155 (La. App.2d Cir.1/21/98), 705 So.2d 1280. Although we find error in the reasons given by the WCJ in applying La. R.S. 23:1208, as amended in 1997, to the case sub judice, we conclude that she was correct in her finding that the statute, as amended, is to be applied to the case sub judice.
In the recent case of Our Lady of The Lake Regional Medical Center v. Helms, 98-1931 (La.App. 1st Cir.9/24/99), 754 So.2d 1049, the first circuit determined that the 1997 amendment to La. R.S. 23:1208 is retroactive in nature. We agree with this well-reasoned opinion of the first circuit and, in particular, the following:
Act No. 1108 of 1997 does not establish a new rule, right or duty and does not change existing rights or obligations of the parties. Prior to the enactment of this act, an employer always had the right to bring an action in district court to obtain restitution of workers' compensation benefits that had erroneously been paid to an employee, including payments made to an employee who had committed workers' compensation fraud under La. R.S. 23:1208. See Cajun Bag and Supply v. Baptiste, 92-1218 (La.App. 3d Cir.3/1/95), 651 So.2d 943. (Emphasis added.)
An employer, under the quasi contractual obligation of unjust enrichment, is entitled to recover benefits wrongly paid as the result of fraud. Where one is unjustly enriched at the impoverishment of another, without cause, the value of that enrichment must be restituted. Our Lady of the Lake, supra, citing Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); and La. C.C. arts. 2298 and 2299. Accordingly, the 1997 amendment does not change the law substantively, but only sets forth that the Office of Workers' Compensation has jurisdiction to award a reimbursement of benefits.
Laws which determine jurisdictional or procedural questions and rules are applicable from the date of their promulgation, to all lawsuits, including those based upon facts and acts that predate the amendment. Our Lady of The Lake, supra; Atiyani v. Denham Springs Health Care, 610 So.2d 860 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1265 (La.1993); La. C.C. art. 6. As such, La. R.S. 23:1208, as amended by Act No. 1108 of 1997, is to be applied retroactively. We find, therefore, that the WCJ was legally correct in her application of the law and in awarding Plaintiffs restitution of the funds paid to Defendant in the form of benefits and medical costs.
Since we find La. R.S. 23:1208 is applied retroactively, Defendant's third assignment of error is moot.
Plaintiffs' Assignment of Error No. 1: The WCJ erred in denying Plaintiffs' claim for reimbursement from Defendant for costs or value of transportation expenses and reasonable cost of investigation and litigation of this claim in the amount of $13,684.66.
The WCJ denied Plaintiffs reimbursement of these expenses, opining in *1072 her reasons for judgment that there is no provision in La. R.S. 23:1208 for such reimbursement. Plaintiffs' position that this is error is not entirely correct; the WCJ clearly awarded as restitution "the total amount of indemnity and medical expenses and mileage reimbursement made to or on behalf of the claimant." La. R.S. 23:1208(D) states that a person in violation of the statute may be ordered to make restitution. Subsection D provides for restitution of "benefits made or payments obtained," which is defined as "the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expenses, and reasonable costs of investigation and litigation." La. R.S. 23:1208(C)(4). Although this definition is contained in Subsection C, which pertains to criminal penalties, it is incorporated by reference to Subsection D, which provides for restitution. It clearly applies to restitution claims.
At trial, counsel for Plaintiffs stated, "To date, attorneys fees and cost[s] associated with the defense of the 1008 claim and the claim before you today as well as all expenses involved, total $13,684.66." On appeal, the Plaintiffs contend they are entitled to this amount as restitution for investigation and litigation costs and transportation expenses. As noted above, however, the judgment already awarded restitution of the travel expense payments obtained by Allen. These cannot be awarded twice. Notably, Subsection C(4) does not include any other persons' travel expenses unless these are shown to be the "reasonable costs of investigation and litigation."
We, therefore, reverse the denial of reasonable investigation and litigation costs and remand the case to the WCJ to enter a judgment consistent with this opinion.
Defendant's Assignment of Error No. 4: The WCJ erred in casting Defendant with a $5,000 civil penalty in favor of Intervenor, the State, in view of the fact that La. R.S. 23:1208, as it read in October 1995, did not allow for such recovery.
Plaintiffs' Assignment of Error No. 2: The WCJ erred in awarding the $5,000 civil penalty assessed against Defendant to the State instead of awarding it to Plaintiffs.
Defendant's Assignment of Error No. 4, concerning the retroactivity of a statute, was addressed above. The term "workers' compensation judge" was substituted for "hearing officer" in the 1997 revision. This is a procedural change and, therefore, retroactive in accordance with La. C.C. art. 6. This does not affect the WCJ's ability to award a civil penalty.
Plaintiffs assert, however, that the WCJ erred in awarding the civil penalty to the State to be deposited into the OCAF. It is Plaintiffs' position that they are entitled to the civil penalty and not the State. We agree and find that the WCJ committed legal error in her application of the law on this point.
La. R.S. 23:1208 defines only who can assess a civil penalty; it does not state to whom that civil penalty is to be paid. La. R.S. 23:1310.13 states that, unless specifically payable to claimant or otherwise provided specifically by law, all penalties are payable to the State to be deposited into the OWCAF.[3] Our jurisprudence, however, has been contrary to an exact reading of this statute.
La. R.S. 23:1201 provides for a penalty to be assessed against an employer or insurer, or both, if they are deemed to have acted arbitrarily and capriciously in *1073 denying indemnity benefits, medical treatment or transportation expenses to a claimant. The statute does not state to whom the penalty is to be paid, which, under a strict reading of La. R.S. 23:1310.13, should be the State to be deposited into the OWCAF. The jurisprudence, however, has consistently awarded the penalty to the claimant, as the aggrieved party, and not the State.
In the case sub judice, the Plaintiffs are the aggrieved parties. The civil penalty was assessed because Defendant committed fraud against Plaintiffs, not the State. We cannot justify, under the jurisprudence, denying Plaintiffs' receipt of the civil penalty simply by virtue of the fact that they are the employer and insurer rather than an injured employee. To do so would strike an unpalatable inequity.[4] Further, the State reaps the benefits of the criminal penalties assessed. We do not find they are entitled to the civil penalty as well. We conclude, therefore, that Plaintiffs are entitled to the civil penalty of $5,000 and reverse the WCJ in that manner.
Defendant's Assignment of Error No. 5: The WCJ erred in granting any judgment in any amount against Defendant herein.
Defendant asserts that once Plaintiffs stopped paying benefits and Defendant had dismissed his own claim with prejudice, there was no longer a bona fide dispute. We disagree. Simply because Defendant did not have a dispute with Plaintiffs does not that mean that a dispute did not exist for Plaintiffs against Defendant. To hold otherwise would place employers, insurers or third party administrators in a precarious position. Finding that Plaintiffs are entitled to recover, therefore, there is no doubt that there is a bona fide dispute between the parties as necessitated by La. R.S. 23:1310. This assignment of error has no merit.
Plaintiffs' Assignments of Error Nos. 3 & 4:
3) During trial, the WCJ erred in ruling to allow Defendant to selectively invoke his constitutional right against self-incrimination.
4) The WCJ erred in ruling to allow Defendant and his former attorney, A.W. Block, Jr., to invoke the attorney-client privilege by sustaining Defendant's objections in reference to questions posed to Mr. Block by Plaintiffs and by the WCJ's failure to allow Plaintiffs to proffer the testimony of Mr. Block for review by this court.
Finding that Defendant failed to appeal the issue of his commission of fraud, in violation of La. R.S. 23:1208, by false statements, and that Plaintiffs presented sufficient proof of that issue, we do not reach these assignments of error as they are moot.

DECREE
For the foregoing reasons, we affirm those portions of the judgment finding that Defendant, James Gregg Allen, made false statements, committing fraud, in violation of La. R.S. 23:1208; ordering that Defendant, James Gregg Allen, pay restitution to Plaintiffs, Yarnell Ice Cream Company and Fireman's Fund Insurance Company in the amount of $53,172.56, plus legal interest; and ordering Defendant, James Gregg Allen, to pay all costs of these proceedings. That portion of the judgment ordering Defendant, James Gregg Allen, to pay a civil penalty of $5,000 to Intervenor, the Department of Labor, Office of Workers' Compensation Administration, to be deposited into the Office of Workers' Compensation Administrative Fund, is reversed and the penalty is to be paid to Plaintiffs, Yarnell Ice Cream Company and Fireman's Fund Insurance Company. That portion of the judgment denying *1074 Plaintiffs, Yarnell Ice Cream Company and Fireman's Fund Insurance Company, reimbursement for the reasonable cost of investigation and litigation of this matter is reversed and the case is remanded for the entry of a judgment in accord with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NORRIS, C.J., concurs with written reasons.
NORRIS, C.J., concurring.
I subscribe to the majority's well-reasoned opinion except for its discussion of the plaintiffs' second assignment of error. On that issue I write separately to express my reservations about directing payment of a civil penalty under R.S. 23:1208 D to the employer. The general rule with regard to penalties in the OWC is stated in R.S. 23:1310.13: "All penalties imposed by the Workers' Compensation Act, except those specifically payable to claimants, or as otherwise specifically provided by law, shall be deposited into the Office of Workers' Compensation Administrative Fund[.]" A plain reading of this statute would appear to mandate that the civil fraud penalty be paid to the fund.
I acknowledge, however, that the civil penalty of section 1208 D is a relatively new concept (created by both Acts 90 and 1108 of 1997), and I am unable to find any reported cases to analyze its proper application. Moreover, the civil penalty of R.S. 23:1201 F (for the employer's failure to pay benefits timely) is routinely made payable directly to the claimant. See, e.g., Brown v. Texas-LA Cartage, 98-1063 (La.12/1/98), 721 So.2d 885; Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96), 674 So.2d 947, and numerous appellate court cases. There is nothing in Section 1201 F that specifically excepts it from Section 1310.13.
Certainly, I can perceive a difference between these two penalty provisions Section 1201 F is designed to encourage timely payment of benefits, and Section 1208 D to discourage fraudulent claims. However, I am not sure there is any rational basis for treating them differently. There is a certain uniformity in directing both penalties to be paid to the aggrieved party. Against this legal background, I reluctantly concur that the WCJ abused her discretion in directing the $5,000 civil penalty to be paid to the State.
NOTES
[1] Defendant appeals only the timing of the false statements; he does not appeal the actual finding of the WCJ that he willfully made false statements for the purpose of obtaining benefits in violation of La. R.S. 23:1208.
[2] In fact, Defendant was treated by Dr. Lopez at the Shell Clinic on October 19, 1995, and later that day by Dr. Brown. It was on this visit with Dr. Brown that Defendant denied having any previous back injury.
[3] La. R.S. 23:1310.13 reads as follows:

All penalties imposed by the Workers' Compensation Act, except those specifically payable to claimants, or as otherwise specifically provided by law, shall be deposited into the Office of Workers' Compensation Administrative Fund and used in those amounts appropriated by the legislature as provided for in La. R.S. 23:1291.1(E).
[4] We also note that La. R.S. 23:1208 refers to fraud on the part of the employer or the employee. Again, given the jurisprudence, it is doubtful that, if the roles were reversed, the civil penalty would be awarded to the State to be deposited into the OWCAF.