787 So.2d 535 (2001)
James R. HULL
v.
FLUKER FARMS.
No. 2000 CA 0757.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
Rehearing Denied July 6, 2001.
*537 Michael L. Hebert, Baton Rouge, for Plaintiff/Appellant, James R. Hull.
Trenton J. Oubre, Baton Rouge, for Defendant/Appellee, Fluker Farms.
Before: WHIPPLE, KUHN and DOWNING, JJ.
WHIPPLE, J.
This is an appeal by claimant, James R. Hull, from a judgment of the Office of Workers' Compensation Administration. The workers' compensation judge dismissed his claim for benefits and ordered him to make restitution to defendant, Fluker Farms, in the amount of $24,000.00 for costs of investigation and litigation of this matter. The workers' compensation judge made a finding that Hull had willfully made false statements for the purpose of obtaining workers' compensation benefits, in violation of LSA-R.S. 23:1208. For the following reasons, we affirm in part, vacate in part and remand.

FACTS AND PROCEDURAL HISTORY
In October of 1997, Hull was hired as a warehouse laborer by Fluker Farms, a business that supplies feed and other products for pets. On Friday, May 15, 1998, at the end of the work day, Hull was allegedly injured when he slipped and fell on a stairwell while in the course and scope of his employment. Because his immediate supervisor was not present that day, Hull did not report the incident to anyone. However, on the following Monday, he reported the incident to his supervisor, Waco Hitt. Despite allegedly injuring his lower back and neck, Hull did not request or receive any medical treatment at that time. Instead, he continued to perform his normal work duties, although he contends that he worked in pain.
Thereafter, early in the morning on September 8, 1998, Hull allegedly re-injured his neck and lower back when attempting to lift a fifty-pound bag of feed. This alleged accident also was unwitnessed. When Hull saw Hitt later that morning, he told Hitt that his back was hurting and that he needed to see a doctor. Hitt sent Hull to talk to Alden Chustz, the general manager, about his request for medical treatment. Although there is some dispute as to whether Chustz actually made a meaningful offer of medical treatment to Hull, it is clear that the ensuing conversation between Hull and Chustz became heated and ended with Chustz ordering *538 Hull off the premises.[1] Hull's employment with Fluker Farms was terminated effective that day.
Hull then instituted this claim for workers' compensation benefits. In response, Fluker Farms opposed the claim, contending that Hull had made misrepresentations on his employment application after the injury in question in an attempt to obtain benefits. Thus, Fluker Farms pled the affirmative defense of forfeiture of benefits pursuant to LSA-R.S. 23:1208 and 23:1208.1 and sought restitution from Hull.
Following trial, the workers' compensation judge found that Hull had in fact made willful misrepresentations following the alleged work injury in an attempt to obtain benefits. Accordingly, the workers' compensation judge rendered judgment, finding that Hull had forfeited his right to any benefits pursuant to LSA-R.S. 23:1208, due to workers' compensation fraud, and thus dismissed his claim. The workers' compensation judge further ordered that Hull pay Fluker Farms $24,000.00 in restitution for attorney's fees and costs of defending this claim.
From this judgment, Hull appeals, contending that: (1) the workers' compensation judge erred in finding that a LSA-R.S. 23:1208 violation had occurred in this case, given that Hull disclosed all relevant information shortly after a recorded statement and prior to giving any sworn testimony; (2) the workers' compensation judge erred in failing to find that Alden Chustz and Waco Hitt had violated LSA-R.S. 23:1208, in that they fabricated testimony concerning their presence together at the time Hull reported the accident in September 1998; and (3) Hull is entitled to additional attorney's fees for the preparation and work on this appeal.
Fluker Farms answered the appeal, seeking additional restitution and reimbursement for court costs and attorney's fees incurred in answering and defending this appeal.

WILLFUL MISREPRESENTATIONS BY HULL (Hull's Assignment of Error No. 1)
In his first assignment of error, Hull contends that the workers' compensation judge erred in finding that he had violated LSA-R.S. 23:1208. Hull avers that the only alleged misrepresentation herein was an incomplete answer he gave to an investigator for Fluker Farms shortly after the September 1998 accident, when he was asked about prior injuries and accidents. While Hull related that he had been involved in two earlier work-related accidents, he failed to disclose two prior slip and fall accidents. However, Hull contends that the injuries not disclosed were insignificant soft tissue injuries; that these omissions were not an attempt to deceive Fluker Farms; and that the omissions were corrected shortly after the initial statement when Hull properly *539 answered interrogatories, fully disclosing the injuries. Thus, Hull contends, his failure to initially disclose these insignificant injuries cannot form the basis for a finding of a section 1208 violation where they were disclosed shortly thereafter.
Fluker Farms, on the other hand, contends that the finding of a section 1208 violation is amply supported by the record and is not manifestly erroneous. Specifically, Fluker Farms contends that Hull's misrepresentations were not limited to his failure to disclose in his original statement his two prior slip and fall accidents, but, instead, were extensive and ongoing. Thus, it contends, the workers' compensation judge's finding of a section 1208 violation must be affirmed.
Louisiana Revised Statute 23:1208 provides, in pertinent part, as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits. This broadly-worded statute encompasses any false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Resweber v. Haroil Construction Company, 94-2708, 94-3138, pp. 1-2, 7 (La.9/5/95), 660 So.2d 7, 9, 12.
The only requirements for forfeiture of benefits under section 1208 are that: (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber, 94-2708, 94-3138 at p. 7, 660 So.2d at 12. The issue of whether an employee forfeited his workers' compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Short v. Gaylord Chemical Corporation, 98-0606, p. 10 (La.App. 1st Cir.4/1/99), 731 So.2d 493, 499.
Before an appellate court may reverse the factual determinations of a workers' compensation judge, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong or manifestly erroneous. Fontenette v. McDermott, Inc., 95-0190, p. 4 (La.App. 1st Cir.10/6/95), 694 So.2d 266, 269.
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous *540 or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). Moreover, when findings are based on a credibility determination, a factfinder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Fontenette, 95-0190 at p. 4, 694 So.2d at 269.
In investigating the instant claim, Fluker Farms requested that Ann McGill, a claims investigator with Cedor & Company, interview Hull. Accordingly, on September 29, 1998, shortly after the alleged second accident, McGill conducted a recorded interview with Hull in the presence of his attorney. When asked by McGill if he had been involved in any prior on-the-job accidents, Hull related that he had injured his thumb while working for Ferris Engineering, for which he was off of work for approximately eight or nine months.
Additionally, Hull stated that he had sustained a prior back injury approximately twelve years earlier when employed by Cleve Willett Tires. However, he claimed that the injury was only a "pulled muscle" and that it involved the area between his shoulder blades, not his neck or lower back. Hull further stated that the injury had completely resolved itself approximately eighteen months to two years after the accident.
When questioned about any back problems following the injury with Cleve Willett Tires, Hull denied having any lower back pain for the ten-year period prior to the alleged accidents in question and also denied having ever seen a doctor with back complaints during that ten-year period. Moreover, Hull specifically denied having ever been injured in a slip and fall accident or that he had filed any other claims other than workers' compensation claims for the two work injuries disclosed.
However, as the record discloses, these representations by Hull were proven to be utterly false by evidence introduced at trial by Fluker Farms. Specifically, despite Hull's claim that the prior back injury he sustained while working for Cleve Willett Tires did not involve the neck or lower back, medical records from that injury demonstrate that Hull was treated at the Bone and Joint Clinic for complaints of pain in his left shoulder, neck and lower back. Moreover, he underwent CT scans of the cervical and lumbar spine. The cervical CT scan revealed prominent foraminal narrowing bilaterally at level C4-5 and on the right at level C3-4, with a large posterolateral spur at level C3-4. The lumbar CT scan revealed degenerative changes at level L3-4 and a "prominent and marked" annular bulging of the disc at level L4-5 with encroachment upon the neural foramina and the central canal. Thus, Hull had been diagnosed as having a chronic cervical and lumbar strain with associated preexisting cervical and lumbar spondylosis.
Additionally, Hull specifically stated that he had not been involved in any other accidents or sustained injuries other than the two work-related injuries outlined above, that he had never had any slip and fall injuries, and that he had not filed any other claims for injuries. However, Fluker Farms presented evidence at trial clearly establishing that Hull had in fact sustained two slip and fall injuries resulting in him filing lawsuits.
In particular, on April 11, 1997, only seventeen months before Hull's recorded interview with McGill, Hull was involved in a slip and fall accident when he slipped down the steps of his home. He was taken by ambulance to Earl K. Long Hospital with complaints of pain in his lower back, and, thereafter, he was treated by a chiropractor on a continuous basis for a period *541 of three months. As a result of this accident, Hull filed suit against his landlord and received approximately $2,500.00 in settlement of his claim.
Also, in December of 1989, Hull slipped and fell in a clear substance in a Wal-Mart store in Port Allen and was taken by ambulance to Earl K. Long Hospital for complaints of lower back pain. Hull filed suit against Wal-Mart as a result of that accident. Photographs taken in connection with that incident depict Hull lying on the floor in Wal-Mart being attended to by emergency medical technicians.
Also, in his deposition taken on August 9, 1990, in connection with the prior Wal-Mart litigation, Hull specifically testified that he had been told by one of his doctors that he had a herniated disc that would likely give him trouble off and on. He also testified that his treating physician had told him that he may have to undergo surgery. Hull further stated in the deposition that his back pain was "constant" and that he had neck pain "off and on." Hull eventually settled his claim against Wal-Mart for approximately $4,000.00.
Moreover, Hull's medical records introduced into evidence belied his claim in the interview with McGill that he had not had any lower back pain for the ten-year period prior to the alleged accidents in question and that he had not seen a doctor with back complaints during that ten-year period. The records from Earl K. Long Hospital indicate that Hull complained of lower back pain on many occasions in the ten years preceding the alleged accidents in question, having made such complaints on at least four occasions in the year immediately preceding the alleged May 15, 1998 work injury.[2]
In addition to the omissions and misrepresentations made by Hull in his initial interview with McGill, the record further establishes that Hull misrepresented his medical history with regard to prior back injuries to his treating physician, Dr. Steven Bailey. Hull first presented to Dr. Bailey, a neurosurgeon, on October 19, 1998, relating that he had injured his neck and lower back in two accidents while working for Fluker Farms. With regard to previous back problems, Hull related only that he had suffered a previous episode of lower back pain about twelve years earlier from a "pulled muscle" and that he had been told at that time by an orthopedist that he had arthritis in his back. Hull further related that he had recovered from that injury within three to four months after the injury. Hull did not inform Dr. Bailey that he had been to Earl K. Long Hospital for neck and lower back pain on numerous occasions in the past; that he had been involved in a slip and fall accident in April of 1997, resulting in injury to his low back; or that he had filed previous workers' compensation and personal injury suits based upon lower back pain and neck pain. When made aware of Hull's history of back problems, Dr. Bailey testified that Hull had provided him with an "inaccurate" history.
Additionally, Hull's misrepresentations continued in his deposition taken in connection with this matter on July 28, 1999, less than two months before trial of this matter. At that time, Hull testified with regard to his physical limitations allegedly caused by the work accidents. Although he conceded that he had increased his physical activities somewhat in the months preceding his deposition, he stated that he was limited in his activities and had to take *542 breaks often. He further contended that, at that time, his physical limitations prevented him from bending at the waist with his legs locked "in any way, shape or form" and still necessitated that he hold onto the railing every time he ascended or descended the four steps to his home, as he had been required to do since the alleged injury in question.
Hull additionally testified that while he had begun assisting his wife with a lawn care business they had, he only picked up trash and operated the weed-eater machine and blower. He specifically denied ever being able to lift the lawnmower out of the car by himself since his alleged work injuries. Hull acknowledged that he cut the grass at his own home, stating that he had begun assisting his wife with this chore only about one month before his deposition. But he stated that he never cut the entire yard by himself and that he had to take breaks often.
However, general manager Chustz of Fluker Farms, testified at trial that shortly after Hull's employment with Fluker Farms was terminated, he witnessed Hull bending over to hook up a boat trailer to his truck.[3] Chustz also testified that he had seen Hull mowing his lawn and operating the weed-eater machine and that in late 1998, he observed Hull unloading a sofa and love seat out of a truck. Hitt, Hull's supervisor, also testified at trial that in the course of running errands on June 14, 1999, he saw Hull leaving home with a lawnmower in his car. At that point, he decided to follow Hull, and he testified that he then saw Hull lift the lawnmower out of the car and witnessed Hull bend in "a full bend position." Moreover, Fluker Farms introduced surveillance tapes at trial, which depict Hull engaged in various forms of physical activity with no apparent difficulty and which clearly depict him ascending the steps of his home with apparent ease.
Considering the foregoing, we conclude that the record establishes a pattern of willfully-made statements and misrepresentations that belie any argument to the contrary. The evidence outlined above clearly supports the workers' compensation judge's finding that Hull engaged in fraudulent behavior for the purpose of obtaining workers' compensation benefits. As noted by the Supreme Court in Resweber:
The legislature has made a policy decision that willful and deliberate false statements made specifically for the purpose of obtaining workers' compensation benefits is an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over recent years to make Section 1208 easier to enforce and to make its penalties stronger.
Resweber, 94-2708, 94-3138 at p. 14, 660 So.2d at 16.
Accordingly, under the principles which govern our review of this matter, we find no manifest error by the workers' compensation judge in her factual findings or in her conclusion that Hull forfeited his right to workers' compensation benefits based upon his willful misrepresentations.
With regard to the amount of restitution ordered in this case, we note that, at first glance, the award of $24,000.00 seems shocking.[4] Indeed, our research has not *543 revealed any other case awarding such a substantial amount for recompense of in-house investigation and litigation expenses absent any payment of benefits. In the instant case, while we find no error in the workers' compensation judge's factual findings or in the conclusion that an order of restitution was appropriate herein, we are unable to conclude, on the record before us, that the restitution ordered herein was proper, given the statutory limitations applicable to such an award.
Subsection (D) of R.S. 23:1208 specifically provides that restitution may be awarded for "benefits claimed or payments obtained through fraud" and that such an award of restitution is only allowed "up to the time the employer became aware of the fraudulent conduct." While subsection (D) contains no definition of "benefits claimed or payments obtained," subsection (C) of this statute, which deals with criminal penalties, defines "benefits claimed or payments obtained" as "the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expenses, and reasonable costs of investigation and litigation." (Emphasis added).
Subsection (C) specifically states that this definition applies "for purposes of Subsection C of this Section" and makes no reference to subsection (D). We note that the Second Circuit, in Yarnell Ice Cream v. Allen, 33,020, pp. 7-8 (La.App. 2nd Cir.5/10/00), 759 So.2d 1066, 1072, writ granted, XXXX-XXXX (La.9/15/00), 767 So.2d 699, writ recalled, XXXX-XXXX (La.1/17/01), 777 So.2d 472, concluded that the definition of "benefits claimed and payments made" contained in subsection (C) was incorporated by reference into subsection (D) and, thus, clearly applied to restitution claims made pursuant to subsection (D). Thus, the court remanded the matter to the workers' compensation judge for entry of judgment and calculation of appropriate restitution for investigation, litigation and transportation expenses, for which the employer and insurer were claiming in the approximate amount of $13,684.66. Yarnell Ice Cream Company, 33,020 at p. 8, 759 So.2d at 1072. In Yarnell, the employee had already been ordered to make restitution in the total amount of $53,172.56, for benefits and travel expense payments he had collected from his lawyer.
While we agree that investigation and litigation expenses can be awarded pursuant to subsection (D), as stated above, such restitution is limited by statute and may be ordered "only up to the time the employer became aware of the fraudulent conduct." LSA-R.S. 23:1208(D). Although David Carl, claims manager for Southeastern Risk Managers, briefly testified as to the amount of expenses attributable to the investigation and defense of this claim, the record does not clearly establish the date that Fluker Farms became aware of Hull's fraudulent conduct or that all the expenses to which Carl testified were incurred prior to the time that Fluker Farms had sufficient information to garner its defense founded upon Hull's fraudulent conduct. The only documentary evidence submitted in support of Fluker Farms' claim was a computerized print-out of payments apparently made to attorneys and investigators. No itemized statement of charges was submitted to establish the legitimacy of the expenses incurred or the date on which the services were rendered in relation to the point in time when Fluker Farms became *544 sufficiently apprised of Hull's fraudulent conduct.
For these reasons, and given the strict interpretation governing such penal provisions, we conclude that the restitution order must be vacated and this matter remanded to the workers' compensation judge for a determination of what portion of the restitution expenses claimed may be appropriately awarded under the confines of LSA-R.S. 23:1208(D).

HULL'S CLAIM OF WILLFUL MISREPRESENTATIONS BY EMPLOYEES OF FLUKER FARMS (Hull's Assignment of Error No. 2)
In his second assignment of error, Hull contends that the workers' compensation judge committed manifest error in failing to find that Fluker Farms had also violated the provisions of LSA-R.S. 23:1208, when two of its employees, Hitt and Chustz, testified untruthfully at trial. As quoted above, LSA-R.S. 23:1208 prohibits willful misrepresentations made by anyone "for the purpose of obtaining or defeating any benefit or payment." (Emphasis added). Thus, an employer may also be found to have violated this statute where misrepresentations are made for the purpose of defeating an employee's claim for workers' compensation benefits.
In the instant case, Hitt, the job products manager and Hull's immediate supervisor, testified at trial that on September 8, 1998, Hull approached him, complaining of back pain. According to Hitt, he noted that Hull appeared to be in "extreme discomfort," and immediately walked with Hull to meet with general manager Chustz, to discuss the situation. Hitt distinctly testified that he was present during the entire meeting between Hull and Chustz, and he then proceeded to recount the events of the meeting and the alleged remarks and assertions made by Hull during the meeting. Specifically, Hitt testified that when the meeting began, Hull initially told Chustz that his back had been hurting when he came to work that morning.
However, Hull denied that Hitt was present at the beginning of the meeting. Hull testified that Hitt only came to the general manager's office when Chustz beckoned him once the conversation between Hull and Chustz had become "intense."
Chustz, on the other hand, also testified that he was "positive" that Hitt was present during his entire conversation with Hull. However, when confronted with his deposition testimony wherein he had stated that Hitt was not present during the entire meeting, Chustz acknowledged on the stand that Hitt may not have been present the entire time. Chustz then stated as follows, "I did not willfully try and misrepresent Mr. Waco Hitt being in the office at the time of that incident. It was a very disconcerting sort of thing to happen. So, if there was some discrepancy in that, and I'm not saying that for sure at this point now that he was there for the whole point, but it wasn't willfully a misrepresentation."
With regard to this testimony by Hitt and Chustz, the workers' compensation judge specifically found that "there was [sic] some actions on the part of Fluker Farms to better their [sic] position." She further found that Hitt's claim that he had been present for the entire meeting "was mainly an effort for Mr. Chutz [sic] to not be alone in all the testimony that he was going to give ." Nonetheless, the workers' compensation judge did not find that Chustz's account of the meeting was fraudulent. The judge ultimately concluded that the testimony of these men regarding their presence together during the meeting was not "a deliberate misrepresentation to try and do [Hull] out of benefits."
We note that the participants in this case were less than shining examples *545 of how employers and employees should interact in the resolution of a workers' compensation claim. We recognize and note that in order for the workers' compensation scheme to work properly for both employers and employees, all parties should be required by the courts to conduct themselves in a manner respecting their reciprocal obligations under the Act. While we are troubled by the conduct of these employees of Fluker Farms with respect to the above noted attempts to buttress their testimony, as well as the other harassing actions by Fluker employees toward Hull during the pendency of this matter noted by the judge, we are unable to say the workers' compensation judge erred in her conclusion that these acts did not constitute "willful misrepresentation" under the statute.
Moreover, we note that had Hull been truthful from the outset with regard to his history of back problems and extent of present disability, he could have perhaps been entitled to benefits for an aggravation of his preexisting condition, with the employer possibly being entitled to relief under the Second Injury Fund. Clearly, the parties have acted less than nobly.
Nonetheless, considering the record as a whole, under the principles which govern our review, we are unable to say that the workers' compensation judge was manifestly erroneous in her conclusion that any inaccuracies by Hitt and Chustz as to their presence together during the meeting did not constitute a material and deliberate misrepresentation for the purpose of denying Hull benefits.
Thus, this assignment of error lacks merit.

HULL'S REQUEST FOR ATTORNEY'S FEES (Hull's Assignment of Error No. 3)
In his final assignment of error, Hull requests that this court award him attorney's fees for the work of his attorney in preparation of this appeal. Because we affirm the workers' compensation judge's dismissal of Hull's claim for workers' compensation benefits, we likewise conclude that no statutory basis exists for such an award. Accordingly, this assignment of error also lacks merit.

FLUKER FARM'S REQUEST FOR ADDITIONAL RESTITUTION FOR COURT COSTS AND ATTORNEY'S FEES ON APPEAL (Fluker Farm's Answer to the Appeal)
In its answer to the appeal, Fluker Farms requests additional restitution from Hull pursuant to LSA-R.S. 23:1208(D), for court costs and attorney's fees incurred in defending this appeal. However, under the circumstances presented herein, we decline to award any additional attorneys fees.

CONCLUSION
For the above and foregoing reasons, the September 27, 1999 judgment of the workers' compensation judge, finding that James R. Hull forfeited all rights to workers' compensation benefits pursuant to LSA-R.S. 23:1208 and, accordingly, dismissing his claims with prejudice, is affirmed in part. The portion of the judgment ordering Hull to pay Fluker Farms $24,000.00 in restitution is vacated, and the matter is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed one-half each to the parties.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED. RELIEF SOUGHT IN ANSWER TO APPEAL DENIED.
NOTES
[1] According to Hull, Chustz initially told Hull that he would not honor the request for medical treatment because the request was made four months after the May work accident. Hull further related that Chustz then stated that Waco Hitt could personally take Hull to a clinic, but that Chustz then retracted that offer and ordered Hull off the premises.

Chustz, on the other hand, stated that Hull changed his story several times as to the cause of his alleged back pain. According to Chustz, only after he told Hull that Fluker Farms could not be responsible for an accident that happened over the long Labor Day weekend did Hull claim that his alleged injury was work-related. Chustz further stated that he offered to bring Hull to the Hill Industrial Clinic, but Hull was not interested and only wanted to be given two weeks off of work. He related that when he refused Hull's request for two weeks off of work, Hull became belligerent, and Chustz told Hull to leave the premises.
[2] When questioned at trial about the omissions and inaccuracies in his statement to McGill concerning prior accidents and his history of back problems, Hull merely stated that he did not recall making these misrepresentations.
[3] Hull lived on the same street on which Fluker Farms was located; thus, Chustz and other employees of Fluker Farms passed by Hull's home on a regular basis on their way to and from work.
[4] We find that Hull's assignment of error as stated, i.e., that the workers' compensation judge erred in finding a section 1208 violation had occurred in this case, and the arguments presented in support are sufficient to encompass a challenge to the restitution ordered herein under Section 1208. See LSA-C.C.P. art. 2164.