2MCCLENDON, J.
This appeal arises from an action for workers’ compensation benefits that .were denied. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On January 12, 2000, David Wayne Hurst filed his disputed claim for workers’ compensation benefits with the Office of Workers’ Compensation Administration (hereinafter “OWC”), against his employer, Railserve, Inc. (“Railserve”), alleging that he suffered an accident, during the course and scope of his employment with Railserve, on September 1, 1999, resulting in permanent disability to his foot.
Trial was held on September 20, 2001, wherein the OWC judge determined that plaintiff committed fraud based on intentional and false statements made to his treating physician for the purpose of obtaining workers’ compensation benefits, thus forfeiting the rights to all benefits under the Workers’ Compensation Act as might otherwise be awarded. The judgment, signed on October 12, 2001, forms the basis of this appeal.
In his one assignment of error, plaintiff urges that the OWC judge was manifestly erroneous in finding that he committed fraud under LSA-R.S. 23:1208.
DISCUSSION
An employee who sustains a personal injury by accident arising out of and in the course and scope of his employment is entitled to collect workers’ compensation from his employer, unless he is otherwise eliminated from benefits under the provisions of Title 23. LSA-R.S. 23:1031(A). “Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than |3simply a gradual deterioration or progressive degeneration. LSA-R.S. 23:1021(1). The employee who claims a right to collect workers’ compensation benefits has the burden of proving a work-related accident by a preponderance of the evidence. Bolton v. B E & K Construction, 2001-0486, pp. 7-8 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35; Catchot v. RAMCO Construction, 2000-1922, pp. 2-3 (La.App. 1 Cir. 11/14/01), 818 So.2d 105, 107, citing Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
LSA-R.S. 23:1208 provides in relevant part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers’ *345 compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute applies to any false statement or misrepresentation made specifically for the purpose of obtaining workers’ compensation benefits. This broadly-worded statute encompasses any false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Hull v. Fluker Farms, 2000-0757, pp. 5-6 (La.App. 1 Cir. 5/11/01), 787 So.2d 535, 539, writ denied, 2001-2291 (La.11/16/01), 802 So.2d 612, citing Resweber v. Haroil Construction Company, 94-2708, 94-3138, pp. 1-2, 7 (La.9/5/95), 660 So.2d 7, 9, 12.
The only requirements for forfeiture of workers’ compensation benefits under section 1208 are that: (1) there is a false statement or | representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Hull v. Fluker Farms, 2000-0757 at p. 6, 787 So.2d at 539.
The issue of whether an employee forfeited his workers’ compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Hull v. Fluker Farms, 2000-0757 at p. 6, 787 So.2d at 539. Before an appellate court may reverse the factual determinations of the OWC judge, it must find from the record a reasonable factual basis does not exist for the findings, i.e., that the findings are clearly wrong or manifestly erroneous. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Hull v. Fluker Farms, 2000-0757 at p. 6, 787 So.2d at 539-40, citing Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
Plaintiff testified at the trial of this matter that he was employed by Railserve as a conductor and locomotive engineer beginning in March 1998. His duties included moving and switching out railroad cars at the BASF plant in Geismar. Plaintiff testified that he first hurt his foot on September 1, 1999, when he stepped down from a railroad car onto rocks along the railroad tracks and felt a sharp pain in his left foot. He testified that he did not report this incident and continued to work.[2] Plaintiff stated he was injured a second time on September 19, 1999, when he stepped off a railcar into a hole along the tracks. According to plaintiff, he reported this incident to his supervisor, James Anderson, who told him to fill out an accident report at the end of his shift. Plaintiff testified that he did not do so because he cannot read or write. Plaintiff stated he went to the emergency room the | .^following day in connection with this injury. Plaintiff then testified that he injured his foot a third time on November 11, 1999, when he was again stepping off a railcar, stating that his knees buckled and the pain was a lot worse than the other two times. Plaintiff stated that at the end of his shift that day, he could not walk and that an engine had to be brought to him to bring him to the work trailer.
Plaintiff further testified that his wife called Mr. Anderson the next morning to tell him that plaintiff was going to the *346 hospital for medical treatment. Plaintiff testified that he told his treating physician, Dr. Sandra Mundine, that the day before, at work, he had stepped off a railcar into the rocks and that he felt a sharp pain in his foot. Dr. Mundine diagnosed plantar fascititis.
Plaintiff then stated that on a subsequent visit, he brought a piece of paper to Dr. Mundine that he assumed was a workers’ compensation form for benefits. Dr. Mundine’s office filled it out and he signed it.
Plaintiff was referred to Dr. Darryl Peterson, an orthopedic specialist, for a second opinion, and eventually had a surgical release of his plantar fascia by Dr. Janet Lewis.
On cross-examination, plaintiff testified that he told all his doctors about all three accidents. He further testified that although he did not report the first accident to Mr. Anderson, he reported the other two.[3] He testified that all three of his supervisors knew he had been injured on the job.
In this regard, James Anderson, one of plaintiffs supervisor’s at the Geismar plant, was called as a witness. Anderson testified that plaintiff did not report any of the three accidents to him and that it was the policy of Railserve to have all accidents, no matter how minor, reported. Also, no |fiother employees approached Anderson about plaintiff being hurt at work. Plaintiff did approach Anderson in September or October of 1999 to ask him what disability programs Railserve offered. Plaintiff was referred to Tim Pul-len, the assistant vice-president of human resources in Atlanta, who faxed to Anderson a form for short-term disability benefits. When he gave the form to plaintiff, Anderson told plaintiff they were for short-term disability benefits.
Jason Lambert, another supervisor to plaintiff and also his neighbor, testified that plaintiff told him he was hurt, but never said it was because of his job. Plaintiff never reported an accident to him. Lambert also stated that any accident, no matter how small, was to be reported.
Joseph McIntosh also worked for Rail-serve and was another one of plaintiffs supervisors. He did not recall anything about the plaintiffs alleged accidents. He stated that if an engine was sent to pick up plaintiff, he would have known and reports would have had to be written. McIntosh had no reason to believe that plaintiffs injury was from his job and never heard any employee say plaintiff was injured on the job. McIntosh also testified that, on prior occasions, plaintiff had been given help filling out paperwork.
Tim Pullen testified by deposition. In 1999, he was the service manager for the Geismar location of Railserve. On November 18, 1999, Pullen was contacted by Anderson that plaintiff was seeking short-term disability benefits and a form and letter were sent out to be completed by plaintiff. Plaintiff then contacted Pullen after November 20, 1999, asking him if he would receive his bonus. Pullen told plaintiff that the bonuses were dependent on whether there had been any human error incidents |7resulting in property damage and, since his was an injury situation, he would receive his bonus.
Dr. Sandra Mundine, a podiatrist, also testified by deposition. She first saw plaintiff on November 12, 1999.[4] At that *347 time, plaintiff told her that his left foot had been hurting for about eight months. Dr. Mundine stated:
“The only thing that I can remember that was significant about him was that when we talked about his job and had this injury occurred on the job, and we even talked about a workman’s comp claim, and he said that— and I am going to quote, he said that he was not going to file a workman’s comp because with his job you get a bonus if you don’t file any claims.”
Dr. Mundine told plaintiff that she did not think that was correct and suggested that he talk to his representative.
Dr. Mundine also remembered another visit after plaintiff discovered his job was no longer available to him and that his short-term disability benefits would be terminated. When plaintiff left her office, he walked with a noticeable limp. When he came back that afternoon, to tell Dr. Mun-dine not to release his medical records to his employer, he was angry and was walking without a limp or any type of protective gait at all.
Following review of the exhibits, including the medical testimony, the OWC judge made the following determinations:
The first issue that I’m going to address is [the] all important one of whether or not Mr. Hurst sustained an accident or injury while in the course and scope of his employment. I am of the opinion he did not sustain an accident in the course and scope of his employment, but that he did sustain an injury in the course and scope of his employment. I am of the opinion that he was predisposed to have the plantar fascititis problem, condition, and that the pretty much nature of his job of jumping on and off railroad cars made an asymptomatic condition symptomatic, and brought it to the forefront and then required treatment. As Dr. Mundine, I believe it was Dr. Mun-dine, | «stated in her deposition, once this kind of condition is made symptomatic i[t] rarely goes away. It’s something that you typically just have to learn to live with and try to avoid those conditions that will aggravate it; and his job is such that there would be no way to avoid it with the type of work that he did.
The next issue is the issue of nature and extent of disability. He would be entitled to Supplemental Earnings Benefits because nothing I’ve seen totally disables him from May 16th 2000 forward. They would get a credit week for week under 1225 for the short term disability. They have not only reasonably controverted the claim, however, the Court is convinced Mr. Hurst has committed a 1208 violation. He has committed fraud and misrepresentation before this Court for the purpose of obtaining benefits. Dr. Mundine’s testimony made it very clear. He actually had a discussion with her from the first day of his visit with her about Workers’ Compensation Benefits, and specifically told her he did not want to make a Workers’ Compensation Claim, because he was afraid it would keep him from getting a bonus. It was an unfortunate misunderstanding in his mind as to how the safety bonuses worked. I am of the opinion at a later [time] when it was discovered that was a mistake when he found out from Mr. Pull[en] that he would still get the bonus, that a Workers’ Comp claim didn’t have anything to do with the bonus, that he then started to spin the stories about accidents and having reported accidents. Had he simply stuck to the truth and the fact that his job caused him to have this problem and filed the claim on the up and up as a Workers’ Comp claim with the doctor *348 and reported it to his reporter and told them that it was a Workers’ Comp claim, there would have been no problems. Instead he first tried to hide it from his employer as a Workers’ Comp claim, and then when he found out that it being a Workers’ Comp claim wouldn’t keep him from getting a safety bonus, he then turned around and tried to create one.
After a thorough review of the evidence presented, including the conflicting testimony, we find that there was a reasonable factual basis in the record upon which the trier of fact could have found that plaintiff was trying to create a workers’ compensation claim through willful and false misrepresentations, after initially trying not to create one. These actions clearly fall within the scope of LSA-R.S. 23:1208. Further, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although an appellate court may feel its own evaluations and inferences are as I treasonable. Rosell v. ESCO, 549 So.2d 840, 844. Accordingly, we are unable to say the OWC judge erred in determining that Mr. Hurst committed fraud for the purpose of obtaining workers’ compensation benefits.
CONCLUSION
For the reasons assigned herein, the judgment of the Office of Workers’ Compensation is affirmed. All costs of this proceeding are to be borne by plaintiff/appellant herein, David Wayne Hurst.
AFFIRMED.

. Plaintiff indicated on his disputed claim form that he did report the September 1, 1999 incident to his supervisor.

. Plaintiff’s claim was not filed until after the third alleged accident.

. This visit was before plaintiff’s visit with Tim Pullen, wherein plaintiff was allegedly told by Pullen that an on-the-job injury would not affect his bonus.