754 So.2d 1049 (1999)
OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER
v.
Barbara HELMS.
No. 98 CA 1931.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Writ Denied January 7, 2000.
*1050 Trenton J. Oubre, Baton Rouge, Counsel for Plaintiff/First Appellant, Our Lady of the Lake Regional Medical Center.
Michelle Sorrells, Baton Rouge, Counsel for Defendant/Second Appellant, Barbara Helms.
Before: GONZALES, FITZSIMMONS and WEIMER, JJ.
GONZALES, J.
Barbara Helms injured her back while lifting a case of food in the course and scope of her employment at Our Lady of the Lake Regional Medical Center (OLOL). Workers' compensation indemnity benefits, medical expenses and related expenses were paid by OLOL to or on behalf of Mrs. Helms. Mrs. Helms was paid $319.00 per week in indemnity benefits from the date of the incident, December 13, 1993, until February of 1997, when OLOL terminated indemnity benefits. OLOL reinstated Ms. Helms' indemnity benefits on May 20, 1997, including past due benefits, and continued to pay benefits to Ms. Helms through August 4, 1997. Medical expenses were paid by OLOL to or on behalf of Mrs. Helms from the date of the accident through August 27, 1997.
The total amount of indemnity benefits paid by OLOL to Ms. Helms was $63,314.90; the total amount of medical benefits paid by OLOL to or on behalf of Ms. Helms was $15,499.90; the total amount of travel reimbursement and related expenses paid by OLOL to Ms. Helms was $10,003.20; and the total amount of vocational rehabilitation expenses paid by OLOL to or on behalf of Ms. Helms was $7,267.20, amounting to a total of $96,085.20 in benefits paid to Ms. Helms.
On March 13, 1997, OLOL filed a petition to terminate Ms. Helms' workers' compensation benefits and/or for a reduction of her workers' compensation benefits because of her failure to cooperate with vocational rehabilitation. OLOL alleged that in August of 1995, Dr. Thomas Perone, Ms. Helms' treating physician, felt that she had reached maximum medical improvement and was capable of working in a limited sedentary type of occupation. OLOL alleged that on May 14, 1996, Dr. Perone felt that Ms. Helms could work in a sedentary level of activity and could work *1051 up to a light level of activity. OLOL alleged jobs had been located for Ms. Helms, which had been approved by Dr. Perone, which would pay her 90% of her pre-injury wage, and that Ms. Helms was no longer temporarily totally disabled and no longer entitled to earn supplemental earnings benefits as she was capable of earning 90% of her pre-injury wages. Ms. Helms answered the petition and generally denied OLOL's allegations. She later filed an answer and reconventional demand, asking that OLOL's petition be dismissed, and asking that OLOL be assessed with penalties and attorney fees for temporarily terminating her benefits, and asking for continuing medical and indemnity benefits. The case went to trial before the workers' compensation judge.
After trial on the merits, the workers' compensation judge ruled in favor of OLOL, finding that Ms. Helms had committed fraud in order to obtain workers' compensation. The workers' compensation judge further found that OLOL would be entitled to collect reimbursement, but that under Sumrall v. Luhr Brothers, 95-0779 (La.App. 1 Cir. 12/15/95), 665 So.2d 796, writ denied, 96-0187 (La.3/15/96), 669 So.2d 425, the workers' compensation court did not have jurisdiction to award reimbursement to OLOL. The workers' compensation judge further found that Ms. Helms had forfeited any right to benefits and rejected Ms. Helms' demands at her cost.
OLOL appealed and makes the following assignments of error:
A. Despite correctly finding that workers' compensation fraud had been committed by Barbara Helms pursuant to La. R.S. 23:1208, the workers' compensation judge was clearly wrong and manifestly erroneous in failing to award restitution of benefits to Our Lady of the Lake Regional Medical Center pursuant to La. R.S. 23:1208(D), as amended by 1997 Acts. No. 1108.
B. The workers' compensation judge was clearly wrong and manifestly erroneous in allowing Barbara Helms to make material and contradictory changes to her deposition testimony at the trial of this matter.
Ms. Helms answered the appeal and makes the following assignments of error:
1. The worker's compensation judge was manifestly erroneous in his conclusion that Barbara Helms violated RS 23:1208 and forfeited her right to worker's compensation.
2. The worker's compensation judge was manifestly erroneous in allowing a 10 minute surveillance videotape into evidence when six original tapes existed with several hours of video from approximately 40 hours of surveillance.
3. The worker's compensation judge manifestly erred in his failure to find OLOL arbitrary and capricious when it terminated Barbara Helms' TTD benefits in February 1997 and failed to pay SEB when no job was located for Mrs. Helms which paid 90% of her average weekly wage.
4. The worker's compensation judge manifestly erred in his failure to find that Barbara Helms was not entitled to continuing SEB after benefits were terminated in August 1997 when Dr. Perone testified that Mrs. Helms could not return to work at her pre-injury job and no jobs were proved available to Mrs. Helms which paid 90% of her average weekly wage.

THE STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
*1052 The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 844.

OLOL'S ASSIGNMENT OF ERROR NO. 1
OLOL argues that the workers' compensation judge erred in not awarding restitution under La. R.S. 23:1208(D). The workers' compensation judge relied upon Sumrall, 665 So.2d 796, in finding the workers' compensation court did not have jurisdiction to award restitution to OLOL. He stated in oral reasons for judgment:
Insofar as fraud is concerned, I think she is guilty of fraud and that they would be entitled to collect but that under Sumrall, S-u-m-r-a-l-l, versus Lu[hr] Brothers, 665 So.2nd. 796, the supreme court has held thatit wasn't a supreme court. It was [an appellate] court. The writs were refused, that we don't have jurisdiction, that the jurisdiction is with the district court.
Subsequent to the Sumrall case, the legislature amended La. R .S. 23:1208 by Acts 1997, No. 1108 § 1, to provide that the workers' compensation judge may order restitution of benefits where fraud has been found. OLOL argues that this amendment to La. R.S. 23:1208 is procedural, and thus should be applied retroactively. Louisiana Civil Code article 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
The legislature did not provide a specific date for the effectiveness of Act No. 1108 of 1997, and did not evidence its intention regarding the prospective or retroactive application of the amendment. Act No. 1108 of 1997 was enacted during the regular session of the legislature, and thus became effective on August 15, 1997.
Act No. 1108 of 1997 does not establish a new rule, right or duty and does not change existing rights or obligations of the parties. Prior to the enactment of this act, an employer always had the right to bring an action in district court to obtain restitution of workers' compensation benefits that had erroneously been paid to an employee, including payments made to an employee who had committed workers' compensation fraud under La. R.S. 23:1208. See Cajun Bag and Supply v. Baptiste, 94-1218, (La. App. 3 Cir. 3/1/95), 651 So.2d 943, 948.
There is a general concept of quasi contractual obligations; it is a concept based upon the principle that where there is an unjust enrichment of one at the expense or impoverishment of another, then the value of that enrichment or, in some cases, the amount of the impoverishment must be restituted. Minyard v. Curtis Products, Inc. ., 251 La. 624, 205 So.2d. 422, 432 (La.1967). More specifically, La. C.C. art. 2298 provides:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.

*1053 The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.
Further, La. C.C. art. 2299 provides:
A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it.
The application of the concepts of La. C.C. arts. 2298 and 2299 to workers' compensation is seen in the following cases. In Johnson v. State, Through Division of Administration, 510 So.2d 87 (La.App. 1 Cir.1987), a state employee filed suit to recover workers' compensation benefits. The State reconvened, seeking reimbursement for benefits and medical expenses previously paid to claimant. After trial on the merits, the trial court ruled against the employee on the main demand, finding that the employee failed to prove that an accident with injuries occurred. The trial court ruled in favor of the State on the reconventional demand for reimbursement. On appeal, the employee raised a peremptory exception of no cause of action. The appellate court denied the exception of no cause of action and affirmed the trial court judgment, finding that the State had set forth a cause of action for recovery of payment of a thing not due.
In Hebert v. Jeffrey, 95-1851 (La.4/8/96), 671 So.2d 904, an employer intervened in a third-party tort suit, seeking reimbursement of workers' compensation benefits after a determination that the injured employee was not in the course and scope of his employment at the time of the accident. The trial court rendered judgment in favor of the employer. On appeal to the Louisiana Supreme Court, the employee contended that the recovery was pursuant to the legal theory of unjust enrichment rather than workers' compensation law; therefore, the trial court erred in making the award. The Louisiana Supreme Court affirmed the judgment, finding that a denial of the right to recover the benefits paid would place the insurer in the precarious position of either choosing to pay possible penalties for not paying compensation benefits later determined to be payable, or paying benefits for which it was not liable and later not being able to recover those benefits. Id. 95-1851, 671 So.2d at 906.
Accordingly, Act No. 1108 of 1997 does not change the law. It does, however, determine that the workers' compensation court has jurisdiction to award reimbursement of benefits. Laws which determine jurisdiction and procedure are applicable from the date of their promulgation, to all lawsuits, even to those which bear upon facts and acts of a prior date and to pending lawsuits. Atiyani v. Denham Springs Health Care, 610 So.2d 860, 863, writ denied, 614 So.2d 1265 (La.1993).
Because the workers' compensation judge erroneously believed that the workers' compensation court did not have jurisdiction to award restitution to OLOL, we must remand this case to the workers' compensation judge in order for him to determine when the fraud began and to determine the amount of restitution to be made by Ms. Helms to OLOL for benefits obtained through fraud.[1]

MS. HELMS' ASSIGNMENTS OF ERROR NOS. 1, 3 AND 4
Ms. Helms argues that the trial court erred in concluding that she violated La. R.S. 23:1208, thus forfeiting her right to workers' compensation; that the trial court erred in failing to find OLOL arbitrary and capricious for terminating her temporary total disability benefits in February *1054 of 1997; and that the trial court erred in failing to find that Ms. Helms was entitled to continuing supplemental earnings benefits.
Louisiana Revised Statute 23:1208 provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
B. It shall be unlawful for any person, whether present or absent, directly or indirectly, to aid and abet an employer or claimant, or directly or indirectly, counsel an employer or claimant to willfully make a false statement or representation.
C. (1) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of ten thousand dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or fined not more than ten thousand dollars, or both.
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
(3) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of less than two thousand five hundred dollars, shall be imprisoned for not more than six months or fined not more than five hundred dollars, or both.
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained", for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
Louisiana Revised Statute 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits; therefore, the statute generally becomes applicable at the time of an employee's accident or claim. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. Resweber v. Haroil Construction Company, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 9.
The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or *1055 defeating any benefit or payment. Resweber, 660 So.2d at 12.
In the instant case, the workers' compensation judge found in his oral reasons for judgment:
I think there was fraud in this case. I think this lady was an intelligent lady and that she knew what she was doing and what she was saying when she said it, and that she intended to obtain compensation, additional compensation, and I think that she could do more than what she told Dr. Perone she could do. And like Dr. Perone, I think that she was guilty of fraud.
And that insofar as the rehabilitation is concerned, I can't give any forfeiture for rehabilitation because statute 1226 says that if he fails to rehabilitate himself as deemed necessary by the hearing officer, then that shall be forfeited. There was no hearing officer in this case that determined that rehabilitation was necessary, so 1226 would not apply.
Insofar as fraud is concerned, I think she is guilty of fraud and that they would be entitled to collect but that under Sumrall, S-u-m-r-a-l-l, versus L-u-[h-r] Brothers, 665 So.2nd. 796, the supreme court has held thatit wasn't a supreme court. It was [the appellate] court. The writs were refused, that we don't have jurisdiction, that the jurisdiction is with the district court.
However, I do believe that she's forfeited any rights to SEB. The statute says that if they make a fraudulent statement they forfeit their rights. So, I think that insofar as any SEB is concerned, she's forfeited any rights to SEB; and, therefore, the judgment is in favor of the defendant.
There's also the judgment in favor of the defendant rejecting her demands at her cost.
Now, I realize that the court has said that you have to be careful about cameras and you have to be careful about looking at what the cameras show because of one shot. But when I looked at the camera and saw what she was lifting, she was lifting more than ten, fifteen or twenty pounds. She wasn't having any trouble going up the steps. And lifting clothes is not easy either, and she was able to do that. She wasn't having any trouble going up the steps.
And I also saw, thought I saw, her limping as she went into the doctor's office, and it was brought out in testimony that she did limp when she went to the doctor's officebut it was on occasion that she would limp, and she limped [when] she went into the doctor's office. That's understandable.
The surveillance videotape clearly shows that Ms. Helms was easily able to do activities that in her deposition she denied she was capable of performing; further, the evidence shows that Ms. Helms misled Dr. Thomas Perone in order to continue to obtain workers' compensation benefits. This evidence is consistent with the results of her functional capacity evaluation at the Occupational Performance Center, which indicated that she was exaggerating her symptoms and that she limited herself by discontinuing the tests prior to showing objective signs of stress.
After a thorough review of the evidence, we find no manifest error in the workers' compensation judge determination that Ms. Helms committed fraud and thus forfeited her right to receive workers' compensation and her right to receive supplemental earnings benefits.

MS. HELMS' ASSIGNMENT OF ERROR NO. 2
Ms. Helms argues that the trial court erred in allowing a surveillance videotape into evidence. The determination of whether certain pictures or videotapes are admissible is largely within the discretion of the trial court. Olivier v. LeJeune, 95-0053 (La.2/28/96), 668 So.2d 347, 351.
Ms. Helms objected to the introduction of the videotape on the grounds *1056 that the original group of videotapes actually used during the surveillance should have been introduced. Louisiana Code of Evidence article 901(A) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Louisiana Code of Evidence article 1001(2) provides: "`Photographs' include still photographs, X-ray films, video tapes, motion pictures, and their equivalents." Louisiana Code of Evidence article 1003 provides, in pertinent part: "A duplicate is admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; [or] (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original ...."
Ms. Rebecca Blair, a licensed private investigator, testified that she personally viewed and observed Ms. Helms on the dates of surveillance, and that she personally shot the six videotapes of Ms. Helms. The separate tapes were, thereafter, consolidated into one approximately three hour tape, which had been previously supplied to opposing counsel. At trial, counsel for the defense attempted to introduce another tape composed of segments contained in the consolidated version. Ms. Helms objected on the basis that portions of the original six tapes, portraying periods of inactivity, had been omitted from the three hour version that she had received.
Ms. Helms had been given a copy of the three hour surveillance videotape by OLOL's attorney. She should have proffered it into evidence at the time of her objection if she thought that the excerpt did not fairly depict the entirety of the surveillance videotape. Her failure to proffer the entire surveillance videotape makes it impossible for us to review this issue. Thus, by failing to proffer, Ms. Helms waived her right to argue this matter on appeal.
We find no abuse of discretion in the workers' compensation judge's decision to allow the surveillance video into evidence.

DECREE
Therefore, that portion of the trial court judgment which forfeited all rights of Ms. Helms to workers' compensation benefits is AFFIRMED; that portion of the trial court judgment which dismissed all claims and reconventional demands asserted by Ms. Helms against OLOL is AFFIRMED; that portion of the trial court judgment which dismissed OLOL's claim for restitution of benefits paid to Ms. Helms is REVERSED; and the case is REMANDED to the trial court for further proceedings consistent with this opinion. Costs are assessed against Ms. Helms.
AFFIRMED IN PART AND REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS IN ACCORD WITH THIS OPINION.
WEIMER, J., concurs with reasons.
WEIMER, Judge, concurring.
I agree with the majority opinion, but write to further comment on one Issue. In LeBlanc v. Grand Isle Shipyard, Inc., 95-2452, p. 11 (La.App. 1 Cir. 6/28/96), 676 So.2d 1157, 1164, the claimant made the fraudulent statement on the initial visit to the physician; therefore, all compensation was forfeited. This is not the situation in this matter. Clearly, Ms. Helms was hurt on the job. The payments between 1993 and 1996 appear to be undisputed. It is only after the 1996 functional capacity evaluation that Ms. Helms' veracity is questioned. Thus, only benefits paid as a result of fraud should be ordered reimbursed.
NOTES
[1] Because OLOL has prevailed on assignment of error no. 1, we do not address OLOL's assignment of error no. 2, declining to give an opinion that would merely be advisory. We note, however, that this issue was addressed in Fireman's Fund Insurance Co. v. Browning-Ferris Industries, 30,595, 30,596, 30,597 (La. App. 2nd Cir.5/13/98), 714 So.2d 168, 174-75, writs denied, 98-1555, 98-1569 (La.9/18/98), 724 So.2d 765, 769.