RIVERSIDE TRANSPORTATION, INC.
v.
DAVID EDWIN BURKE AND THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
No. 2007 CA 1370.
Court of Appeals of Louisiana, First Circuit.
March 26, 2008.
NOT DESIGNATED FOR PUBLICATION.
NEIL D. SWEENEY, STEVE K. SCHILLING, Counsel for Plaintiff Appellee, Riverside Transportation Inc.
JILL L. CRAFT, Counsel for Intervenors Appellees, Maria Montalvo Bianca Cheng, Ronald Cheng April Hill Roy Hill, Angel Hebert Lisa Lambert, Pamela Kindel Kristen Miley, and Helga Pope.
PHILIP J. SHAHEEN, Counsel for Defendants Appellants David Edwin Burke and the State of Louisiana Through the Department of Public Safety and Corrections and the Office of State Police
JACK TOBIAS, Counsel for Defendant/Appellant David Edwin Burke.
Before WHIPPLE, PETTIGREW, and HUGHES, JJ.
HUGHES J.
This appeal challenges whether damages were properly awarded against the State of Louisiana and an undercover law enforcement officer who became involved in an altercation with the occupants of a limousine in the New Orleans French Quarter during Mardi Gras when the officer approached the limousine as several ladies were entering the vehicle. For the reasons that follow, we amend the judgment and affirm as amended.

FACTS AND PROCEDURAL HISTORY
On March 5, 2000 Maria Montalvo reserved a portion of Mike Anderson's Restaurant on Bourbon Street to host a Mardi Gras party for some of her friends, relatives, and business associates. Ms. Montalvo hired a limousine from Riverside Transportation, Inc. (Riverside) to drive her and some of her guests from her Baton Rouge residence to the party. Among the occupants of Ms. Montalvo's limousine were: Bianca Cheng, Ronald Cheng, April Stevens,[1] Roy Hill, Angel Hebert, Lisa Lambert, Pamela Kindel, Kristen Miley, and Helga Pope.
Along the way, the Montalvo party rendezvoused with another limousine carrying party guests, after which the two limousines made a stop at a LaPlace tavern before traveling to the French Quarter. When the two limousines became caught up in stop-and-go traffic on Iberville Street, some of the ladies in the group exited the limousine to visit the portable toilets installed along the street. Upon attempting to re-enter the limousine, the ladies were followed by State Trooper David Edwin Burke, who was working undercover in plain clothes, maintaining a perimeter for a nearby drug bust. As justification for his attempting to enter the limousine, Trooper Burke claims that he saw one of the ladies lose her footing as she was entering the limousine and felt it was his duty to come to her assistance. Testimony differed as to the extent and manner in which Trooper Burke entered into the limousine. The occupants of the limousine claim Trooper Burke did not indicate he was a law enforcement officer and they thought he was a hoodlum or gang member attempting to perpetrate a crime on them. Some of the occupants of the limousine became embroiled in a physical altercation with Trooper Burke, resulting in injuries. Roy Hill was arrested for felony assault of an officer.
Riverside filed this lawsuit seeking damages, contending that Trooper Burke, acting under color of state law, unlawfully trespassed into the limousine, committed battery upon the occupants, and wrongfully detained the limousine. Made defendants were David Edwin Burke and the State of Louisiana, through the Department of Public Safety and Corrections. Thereafter, Maria Montalvo, Bianca Cheng, Ronald Cheng, April Stevens, Roy Hill, Angel Hebert, Lisa Lambert, Pamela Kindel, Kristen Miley, and Helga Pope filed an intervention in the suit seeking damages for injuries sustained in the mêlée.[2]
Following a trial without a jury, the trial court entered judgment in favor of Riverside against the defendants for $38,000.00 in compensatory damages, $500.00 in punitive damages, and $5,000.00 in attorney fees, along with costs and interest. The trial court further rendered judgment against defendants in favor of the intervenors for damages, along with costs and interest, as follows: Maria Montalvo  $12,000.00; April Hill $8,500.00; Pam Kindel  $6,500.00; Helga Pope  $5,000.00; Bianca Cheng  $5,000.00; Angel Hebert  $5,000.00; Lisa Lambert  $5,000.00; Kristen Miley  $5,000.00; Roy Hill  $2,500.00; and Ronald Cheng  $2,500.00. The intervenors were also subsequently awarded attorney's fees "in the amount of $150.00 per hour for 234.00 hours through the date of filing of the Motion for Attorney Fees, January 24, 2007, plus any time incurred from that date forward at the rate of $150.00 per hour."[3]
Defendants appeal and contend on appeal that the trial court erred: (1) in finding that plaintiffs carried their burden of proving that the defendants were liable for damages as a result of the actions of David Burke; (2) in refusing to allow Trooper Murphy Paul to testify or to allow defendants to proffer his testimony at the hearing of defendants' motion for new trial; (3) when on Wednesday, September 20, 2006, it ordered defendants' attorney to provide plaintiffs' law enforcement witnesses for depositions on Friday, September 22, 2006, three days before the trial was to begin on Monday, September 25, 2006; (4) when it ruled, during an in-chambers conference on Wednesday, September 20, 2006, that any witness not present for deposition on Friday, September 22, 2006, would be precluded from testifying at the trial commencing September 25, 2006; and (5) in refusing to allow defendants to utilize the depositions of plaintiff/intervenors to cross examine them, particularly as the trial court allowed plaintiffs to cross examine defendants' witnesses with their depositions.

LAW AND ANALYSIS
The trial court issued the following oral reasons for rendering judgment in favor of the plaintiffs:
The court is of the opinion that petitioners Helga Pope and others have preponderated in their burden of establishing liability with respect to the actions of defendant.
The court finds defendant David Burke liable for his actions in entering the limousine without probable cause and without consent of the owner or occupants, therein causing a fracas to ensue.
Therefore, the court grants judgment in accordance therewith and hereafter will assign damages....
Subsequently, the trial court awarded damages and gave additional oral reasons as follows:
The Court finds that petitioner, Riverside Transportation, Inc., has demonstrated by a preponderance of the evidence that they're entitled to compensatory damages in the amount of thirty-eight hundred dollars and punitive damages in the amount of fifteen-hundred dollars, attorney fees in the amount of five-thousand dollars, judgment to be signed accordingly.[4]
...The Court finds that petitioner, Marie Montal[vo], sustained a closed fist, powerful hit frontally to her face without cause or provocation. She testified she was in a great deal of pain and frightened beyond words. The Court awards her twelve-thousand dollars....
Because April Hill while entering the vehicle, while returning to the vehicle, Mr. Burke jumped on her back knocking her to the floor by his weight injuring and frightening her; therefore, the Court awards her eighty-five hundred dollars. With respect to petitioner, Pam Kindel, who suffered injury to her face and has a scar, permanent scar, as well as the trauma she witnessed being inflicted upon her husband, she demonstrated to this Court by a preponderance of the evidence that she sustained injury, and the Court hereby awards her sixty-five hundred dollars.
The Court awards petitioners, Kristen Miley, [H]elga Pope, Lisa Lambert, and Angel ... Hebert for their damages ... five thousand dollars each.
With respect to ... Ronald Cheng and Roy Hill ... twenty-five hundred dollars each....
The damage awards were later amended to include an award to Bianca Cheng in the amount of $5,000.00.

Liability and Damages
In defendants' first assignment of error, they argue that the plaintiffs failed in their burden to prove liability on the part of defendants, and alternatively that the amount of damages awarded was excessive.
Plaintiffs maintain that the actions of Trooper Burke violated 42 U.S.C. § 1983, which provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
In any action or proceeding to enforce a provision of 42 U.S.C. § 1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988(b).
Recovery under § 1983 requires a plaintiff to allege and prove two essential elements: (1) that the defendant's conduct occurred under color of state law, and (2) that defendant's conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or a law of the United States. Lambert v. Riverboat Gaming Enforcement Division, 96-1856, p. 5 (La. App. 1 Cir. 12/29/97), 706 So.2d 172, 175-76, writ denied, 98-0297 (La. 3/20/98), 715 So.2d 1221, (citing Moresi v. State, Department of Wildlife and Fisheries, 567 So.2d 1081, 1084 (La. 1990)). However, a qualified immunity generally applies to most acts of government officials, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.[5] Lambert v. Riverboat Gaming Enforcement Division, 96-1856 at pp. 5-6, 706 So.2d at 176.
The traditional definition of acting under color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." A plaintiff can also satisfy the color of law requirement by showing that the defendant's conduct constituted "state action." In order to constitute state action, the alleged deprivation "must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible," and the defendant "must be a person who may fairly be said to be a state actor." State employment is generally sufficient to render the defendant a state actor, and where a public employee acts in his official capacity or exercises his responsibilities pursuant to state law, he acts under color of state law. Teta v. Packard, 959 F.Supp. 469, 475 (N.D. Ill. 1997) (citing West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).
However, not every act committed by a public employee is attributable to the state. Acts of state officials "in the ambit of their personal pursuits" are not state action. Thus, a public employee's private conduct, outside the scope of his employment and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. There can be no state action or acting under of color of law if the challenged conduct is not related in some meaningful way either to the employee's governmental status or to the performance of his duties. Id.
In the instant case, Trooper Burke testified that he felt that it was his duty as a State Trooper to ensure civilians moved away from the area around the drug bust for purposes of safety and that helping the lady who he says slipped getting into the limousine was in furtherance of that duty. Trooper Burke also stated that they "were blocking traffic and what not." Clearly Trooper Burke believed he was acting in the course and scope of his duties as a State Trooper when the incident at issue in this case occurred. Based on the particular facts and circumstances of this case we conclude, as did the trial court, that Trooper Burke was acting under color of state law.
Notwithstanding, Trooper Burke also admitted that the ladies getting into the limousine were in no way interfering with the drug bust, and that he had no cause to believe they were engaged in any illegal activities. Therefore, we find no manifest error in the trial court finding that Trooper Burke was without probable cause to make an investigative stop of the plaintiffs. Moreover, the trial court reasons, though brief, indicate the court accepted the testimony of the plaintiff/intervenors over that of the law enforcement officers, finding as a matter of fact that Trooper Burke did not announce that he was a State Trooper, and that he in fact entered the vehicle "without probable cause and without consent of the owner or occupants."
A trespass does not always result in a Constitutional violation. But the limited plain view automobile cases do demonstrate that a government's trespass is usually unreasonable and violative of a legitimate expectation of privacy. Naturally, the more intrusive the trespass, the greater the likelihood that that conduct will violate an individual's privacy expectations. Intrusiveness involves an analysis of at least two distinct factors. The first concerns the physical trespass itself  the more difficult it is for the officers to gain an otherwise unavailable view, the more likely it is that the trespass violated an unsuspecting individual's privacy rights. This presumption may be explained because we neither expect nor tolerate trespasses upon our property, whether the trespassers be private individuals or law enforcement officers. U.S. v. Amuny, 767 F.2d 1113, 1127 (5th Cir. 1985) (citing Atwell v. United States, 414 F.2d 136, 138 (5th Cir.1969)).
The second factor to be analyzed concerns the nature of the privacy interest individuals possess in the particular place upon which the government agent trespassed. Courts have long recognized that individuals possess differing degrees of privacy depending upon the nature of the area examined. Of course, the Constitution provides individuals with the greatest protection in their homes. In contrast, there is far less protection as to their automobiles. These decisions reflect the common-sense recognition that an individual's legitimate expectation of privacy erodes when he exposes his personal effects to public scrutiny. U.S. v. Amuny, 767 F.2d at 1127 (citing United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). See also U.S. v. Mosley, 454 F.3d 249, 252 (3rd Cir. 2006); State v. Daigre, 364 So.2d 902, 905 (La. 1978).
Nevertheless, as stated by the Supreme Court, the word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears. Coolidge v. New Hampshire, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971). The Fourth Amendment protects the security a person relies upon when he places himself or his property within a constitutionally protected area, be it his home, his office, his hotel room, or his automobile; there he is protected from unwarranted governmental intrusion. Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966).
The Supreme Court in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that an individual is not "seized" within the meaning of the Fourth Amendment until that individual either submits to the police show of authority or is physically contacted by the police. State v. Long, 2003-2592, pp. 11-12 (La. 9/9/04), 884 So.2d 1176, 1183-84, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005). The Louisiana Supreme Court has expanded this definition to comport with our law, holding that an individual is "seized" under the Louisiana Constitution when he is either "actually stopped" or when the "actual stop" of the individual is imminent. In State v. Tucker, 626 So.2d 707, 712 (La. 1993), the supreme court decided that under Louisiana's slightly broader definition of the term, a "seizure" may occur "when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Id.
However, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. If there is no detention (no seizure within the meaning of the Fourth Amendment) then no constitutional rights have been infringed. Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); State v. Long, 2003-2592 at pp. 11-13, 884 So.2d at 1184. See also Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). If a reasonable person would feel free to terminate the encounter, then he or she has not been seized. U.S. v. Drayton, 536 U.S. 194, 200-1, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242 (2002).
In this action, plaintiff/intervenors testified that when Trooper Burke approached their vehicle he did not identify himself as a law enforcement officer, thereafter unlawfully entered their vehicle and assaulted several of the occupants, and caused Burke's fellow officers to seize the occupants of the vehicle, handcuffing some, and arresting Roy Hill. Trooper Burke testified that he identified himself as a State Trooper when he was assisting the lady attempting to re-enter the limousine, but admits the other occupants of the vehicle may not have heard him. Burke testified that his body did not cross the threshold of the limousine but that he was able to see inside the vehicle from just beyond the doorframe. Burke also stated that without any provocation, Roy Hill kicked him in the face, and that he grabbed Hill's foot before he could pull it back into the limo; at that point, Burke's fellow officers came to assist him.
In the instant case the trial judge resolved the issues of credibility in favor of the plaintiffs and rejected the defendants' version of the events at issue. The trial court found that Trooper Burke was acting under color of state law and his actions resulted in the seizure of and damage to Riverside's limousine and the infringement of the constitutional rights of all of the intervenors, as well as physical and emotional injuries to some of the intervenors. While Trooper Burke's initial approach of the plaintiff/intervenors did not violate their constitutional rights, when his advances were rejected and Trooper Burke was asked to leave, his decision to remain and to insert himself physically within the confines of plaintiffs' vehicle, causing "a fracas to ensue" and bringing about the detention of the limousine and the persons of plaintiff/intervenors, as well as their physical injury, constituted a violation the plaintiffs' civil rights. After a thorough review of the record in this case, we can find no manifest error in the factual findings of the trial court.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). The supreme court has announced a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). See also Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Thus, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882, Where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference. Boudreaux v. Jeff, XXXX-XXXX, p. 9 (La. App. 1 Cir. 9/17/04), 884 So.2d 665, 671; Secret Cove, L.L.C. v. Thomas, 2002-2498, p. 6 (La. App. 1 Cir. 11/7/03), 862 So.2d 1010, 1016, writ denied, XXXX-XXXX (La. 4/2/04), 869 So.2d 889. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d at 844. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 883; Wright v. Bennett, XXXX-XXXX, p. 25 (La. App. 1 Cir. 9/28/05), 924 So.2d 178, 193.
In the instant appeal, the trial court found the testimony of Roy Hill and the other plaintiff/intervenors more credible than that of Trooper Burke and the law enforcement witnesses. The trial court's choice between these two permissible views of the evidence cannot be manifestly erroneous.
Defendants would have this court draw a distinction between the actions of Trooper Burke and the detention of the plaintiffs by his fellow officers; however, we agree with the trial court's rejection of this argument. Because the officers involved were working together as a team and because the illegal actions of Trooper Burke brought about the immediate intervention by his fellow officers, the actions of this team of officers should not be broken down and evaluated as a series of individual actions. Therefore, we affirm the trial court's imposition of liability on the defendants.
With respect to the amount of damages awarded, LSA-C.C. art. 2324.1 states that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." Further, the discretion vested in the trier of fact is great, "even vast," so that an appellate court should rarely disturb an award of general damages. Batson v. South Louisiana Medical Center, 98-0038, pp. 8-9 (La. App. 1 Cir. 12/22/00), 778 So.2d 54, 59, writ denied, XXXX-XXXX (La. 5/11/01), 792 So.2d 740 (citing Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994)).
We have reviewed the damages awarded to Maria Montalvo, Bianca Cheng, Ronald Cheng, April Stevens Hill, Roy Hill, Angel Hebert, Lisa Lambert, Pamela Kindel, Kristen Miley, and Helga Pope, and find no abuse of discretion in these awards.
However, after carefully reviewing the record presented herein, we find the trial court abused its discretion in the amount of damages awarded to Riverside.[6]
Wade B. Randolph, III, testified that he owned Riverside Transportation, Inc., and that his company owned the limousine leased to Maria Montalvo on the date in question. Mr. Randolph further testified that after the limousine was returned to his company, it was discovered that one of the limousine's captain's chairs was damaged in the incident at issue. Mr. Randolph also stated that the cost of repair was $150.00, and that the limousine spent three to four days in the shop while undergoing repairs. He also stated that the time the limousine was being repaired was the busy Mardi Gras season during which he was "averaging a thousand dollars a run on those peak days." Mr. Randolph was asked what other problems he and his business suffered as a result of this incident; he testified as follows:
I have had to deal with this. I was deposed once before. I've been to court already. I am a small business guy. I only have one person in my office to help me. My business demands I be there every day. And I think it's really unfair that I would have been targeted for this. Any reasonable person, anybody that I mention this to is shocked I was drug into this.
* * *
...[T]he news media somehow got ahold of this story and Channel 2 did a story on this one night on the news. And I got some calls from some customers saying that it really didn't make us look very good and that they were disappointed that  just left a bad taste on their mouth about how people rent cars to go have a good time and something like this happens to them. And it makes us look bad.
* * *
...I had meetings with the [chauffeurs] and we talked about  basically we try to stay out of the French Quarter now. We try to drop people off on the edge and wait and exchange phone numbers. We don't want any part of this  what happened before.
* * *
...It's taken my time out. I'm not able to take care of my business today. I have been to court once before. I have been deposed. Having to pay [counsel]. It's not something that I should be  I haven't done anything. It's not right.
Mr. Randolph also testified that he was sued as a result of this incident (by Trooper Burke in New Orleans), and that he had received no further business from the occupants of the limousine (stating that his business was 85% repeat business).
We agree with defendants/appellants that the testimony by Mr. Randolph established only that Riverside sustained damages of at most $4,150.00 ($150.00 to fix the seat and $1,000.00 per day for the four days it was in the shop). Even though this court was not favored by the trial court with detailed reasons itemizing the specific elements of damage encompassed in the damage award to Riverside, it is evident that a significant portion of the damage award to Riverside consisted of Riverside's supposed economic loss and/or damage to Riverside's business reputation (based on the substance of Mr. Randolph's trial testimony and argument of counsel). However, our review of the record does not reveal that Riverside established by a preponderance of the evidence that it in fact suffered these type of economic damages. The mere possibility that press reports of the incident involving the parties herein could negatively affect Riverside's business is insufficient to meet its burden on this element of damage. Further, Riverside produced no financial records demonstrating a loss of revenue or any economic loss other than the $4,150.00 discussed hereinabove. Accordingly, we conclude the trial court abused its discretion in awarding Riverside compensatory damages in excess of $4,150.00.
Further we agree with defendants/appellants that Smith v. Wade, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983), requires a plaintiff in a 42 U.S.C. § 1983 seeking punitive damages to establish that the actions of the defendant resulted from a "reckless or callous disregard for the plaintiffs rights, as well as intentional violations of federal law" in order to "trigger a [factfinder]'s consideration of the appropriateness of punitive damages."
We conclude that the deprivation suffered by Riverside did not warrant an award of punitive damages, therefore, we find it unnecessary to reach a consideration of whether the Constitutional violation herein proceeded from a "reckless or callous disregard" of the rights of Riverside. Aside from the physical damage inflicted to the limousine, Riverside's deprivation in this case was that its limousine was required to wait on the side of the roadway while the passengers, plaintiff/intervenors, were detained and interviewed by the law enforcement officers. Considering that plaintiff/intervenors were placed in fear of their lives and suffered other emotional as well as physical injuries and were not awarded punitive damages, we find that the $500.00 award of punitive damages to Riverside was in error.[7]

Order Compelling Deposition Testimony and Excluding Witness Testimony (Including that of Trooper Murphy Paul)
In the second, third, and fourth assignments of error, defendants/appellants contend that on Wednesday, September 20, 2006, the trial court held an in-chambers meeting with counsel during which the court ordered defendants' counsel to make certain witnesses (law enforcement officers) available for deposition by the other parties by Friday, September 22, 2006, failing which the testimony of the witnesses would be excluded from the trial scheduled for Monday, September 25, 2006.
Although no minute entry, written order, or judgment appears in the record as to this issue, at the beginning of the trial defendants' counsel stated:
We discussed that in chambers and I would like the court to reiterate what the ruling was for the record, that you required the state, through me, to produce the officers for depositions on Friday, whatever date that was, and then I can only tell the court I have got three of them here and three of them I could not get here, Murphy Paul and Roger Smith I could not get here. And we got three of them here, Derrick Stewart, Kirk Allen, and Raymond Scott for the depositions on Friday. But I would just like the record to reflect what it was.
The court responded, "All right."
Defendants argue that they should not have been ordered by the trial court to produce the witnesses for deposition since plaintiffs had listed them as witnesses on the pre-trial order. The pre-trial order filed into the trial court record on September 25, 2003, which was signed by both plaintiffs' counsel and defendants' counsel listed the following law enforcement officers as plaintiffs' witnesses: Roger Smith, Mark Basile, Kirk Allen, David Burke, Derrick Stewart, Raymond Scott, and Murphy Paul. Defendants' law enforcement witnesses were listed as: Roger Smith, Mark Basile, Kirk Allen, and David Burke.[8] On September 6, 2006, defendants filed a motion to amend the pre-trial order "by amending and supplementing that portion of the defendant[s'] witnesses to include: ... State [T]rooper Derrick Stewart ... State [T]rooper Murphy Paul ... State [T]rooper Roy Scott." The trial court did not grant the motion, but rather set the matter for a contradictory hearing on September 26, 2006.
We find no error in the decision by the trial court to require defendants to produce these witnesses for deposition as a prerequisite to granting defendants' motion to modify its witness list, made less than three weeks before the date set for trial and nearly three years after the original pre-trial order was filed. Nor do we find the trial court erred in requiring defendants to produce for deposition the law enforcement witnesses who had previously failed to appear for deposition as requested by plaintiffs.[9] These witnesses were employees of the defendant, the State of Louisiana, through the Department of Public Safety and Corrections, and thus the State had the means available to compel the attendance of these witnesses for purposes of deposition. A trial court has broad discretion in discovery matters; we find no abuse of discretion in the trial court's decision on this issue. See Testa Distributing Company v. Tarver, 584 So.2d 300, 307 (La. App. 1 Cir. 1991); Bryant v. Justiss Oil Company, 2001-832, p. 3 (La. App. 3 Cir. 12/12/01), 801 So.2d 659, 662. See also LSA-C.C.P. art. 191.
Moreover, our review of the record shows that defendants did not proffer the excluded testimony at the September 25, 2006 trial of this case. It is well-settled that error may not be predicated upon a ruling that excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. It is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion was erroneous. Because defendants failed to proffer the testimony of the witnesses at issue, they cannot now complain that such exclusion was error. Our Lady of the Lake Regional Medical Center v. Helms, 98-1931, p. 11 (La. App. 1 Cir. 9/24/99), 754 So.2d 1049, 1056, writ denied, 99-3057 (La. 1/7/00), 752 So.2d 863; Hurts v. Woodis, 95-2166, p. 12 (La. App. 1 Cir. 6/28/96), 676 So.2d 1166, 1175; Menzie Tile Company v. Professional Centre, 594 So.2d 410, 415 (La. App. 1 Cir. 1991), writ denied, 600 So.2d 610 (La. 1992); Williams v. Exxon Corporation, 541 So.2d 910, 912-913 (La. App. 1 Cir.), writ denied, 542 So.2d 1379 (La.1989)). See also LSA-C.E. art. 103(A)(2); LSA-C.C.P. art. 1636.
With respect to the testimony of Trooper Murphy Paul, defendants/appellants complain that the trial court refused to allow a proffer of this witness's testimony, offered at the hearing of their motion for new trial held May 14, 2007. No transcript of this hearing appears in the record on appeal. The minute entry for this date states, in pertinent part:
Documentary evidence was introduced, the motions argued by counsel, and submitted to the Court. Whereupon, for oral reasons assigned, the motion for new trial was denied.
In the memorandum filed in the trial court in support of their motion for new trial, defendants state: "[T]wo witnesses were precluded from testifying in the trial of this matter because they were unavailable to give their deposition on the Friday before the trial date as ordered by [the trial court]. Their testimony was critical to the defendants' case, and would have further supported David Burke['s] testimony." In brief to this court, defendants/appellants state: "Murphy Paul was subpoenaed to appear and testify at defendant[s] Motion for New Trial. However, the trial [c]ourt refused to allow Trooper Murphy to testify, and refused to allow defendants to proffer Trooper Paul's testimony."
Based upon the record presented to this court for review, we are unable to say the trial erred in refusing to allow the proffer of the testimony of Trooper Paul offered for the first time during the hearing on the defendants' motion for new trial. Because the testimony of Trooper Paul should have been available to defendants at the trial of the matter, and was not proffered then, the testimony cannot be called evidence "discovered, since the trial ... which [defendants] could not, with due diligence, have obtained before or during the trial," in accordance with LSA-C.C.P. art. 1972(2).

Exclusion of Use of Deposition Testimony
Lastly, defendants argue on appeal that the trial court repeatedly refused to allow them to use deposition testimony to impeach plaintiffs' witnesses, despite allowing plaintiffs to use deposition testimony on cross-examination.
Deposition testimony may be used at trial for the purpose of contradicting or impeaching the testimony of a deponent as a witness (so far as admissible under the Louisiana Code of Evidence). LSA-C.C.P. art. 1450(A)(1).[10] Extrinsic evidence, such as a prior inconsistent statement, is admissible when offered solely to attack the credibility of a witness. See LSA-C.E. art. 607(D)(2). A prior inconsistent statement is admissible only after the proper foundation has been laid. This foundation requires that the time, place and circumstances of the making of the prior statement be called to the witness's attention and the witness be given an opportunity to admit or deny having made the prior statement. The witness's denial of making the prior statement completes the foundation, and the statement is admissible as impeachment evidence, unless excludable by a determination of unfair prejudice under an LSA-C.E. art. 403 balancing test. Busby v. St. Paul Insurance Company, 95-2128, pp. 9-10 (La. App. 1 Cir. 5/10/96), 673 So.2d 320, 327, writ denied, 96-1519 (La. 9/20/96), 679 So.2d 443. See also LSA-C.E. art. 613.
A review of the instances in the record on appeal when defendants attempted to question a witness with prior deposition testimony reveals that defendants did not lay a proper foundation as to the prior testimony. In particular, defendants failed to give the witnesses questioned the opportunity to either admit or deny making the prior statements at issue. Consequently, we conclude the trial court did not err in sustaining plaintiffs' objections to defendants' attempts to use deposition testimony to impeach witnesses at the trial of this matter.

CONCLUSION
For the reasons assigned herein, we amend the damage award to reduce the amount of damages awarded in favor of Riverside Transportation, Inc. from $38,000.00 in compensatory damages to $4,150.00 in compensatory damages, and to vacate the award of $500.00 in punitive damages. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal, in the amount of $4,237.82 are to be borne by defendants, David Edwin Burke and the State of Louisiana, through the Department of Public Safety and Corrections.
AMENDED; AFFIRMED AS AMENDED.
NOTES
[1] Although at the time of the incident April Stevens and Roy Hill were not married, they had married by the time of trial and April has been referred to in the trial record as April Hill.
[2] For ease of discussion herein we refer to Riverside and the intervenors collectively as "plaintiffs" where appropriate.
[3] The ruling as to the intervenors' attorney fees is the subject of a separate appeal before this court under Docket Number 2007 CA 2175, which has not yet been formally submitted for decision.
[4] Although the transcript of the oral reasons of the trial court state that Riverside was awarded $3,800.00 in compensatory damages, $1,500.00 in punitive damages, and $5,000.00 in attorney's fees, the judgment actually signed by the court awarded $38,000.00 in compensatory damages, $500.00 in punitive damages, and $5,000.00 in attorney's fees. For purposes of this appeal, the trial court judgment is controlling, even though the trial judge may have intended otherwise. Shatoska v. Whiddon, 468 So.2d 1314, 1316 (La. App. 1 Cir.), writ denied, 472 So.2d 35 (La. 1985). While we note this discrepancy in our review of the record, neither party has raised the issue as error on appeal; thus, our discussion of same ends here. Rogers v. Graves, XXXX-XXXX, p. 5 n.2 (La. App. 1 Cir. 2/21/07), 959 So.2d 990, 994 n.2, writ denied, XXXX-XXXX (La. 6/22/07), 959 So.2d 500.
[5] Plaintiffs correctly point out that a defense of qualified immunity must be specially pled, and that defendants herein failed to do so. See Moresi v. State, Department of Wildlife and Fisheries, 567 So.2d at 1086; Gianfala v. Allemand, 444 So.2d 150, 150 (La. App. 1 Cir. 1983); Trahan v. Ritterman, 368 So.2d 181, 184 (La. App. 1 Cir. 1979).
[6] Corporations are persons whose rights are protected by 42 U.S.C. § 1983. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1057 n.7 (9th Cir. 2002).
[7] We note that, in brief to this court, Riverside states that it filed an answer to this appeal "both in the trial court and in the First Circuit asking for an increase in the attorney fee awarded." Although we find no answer filed in the trial court record presented for this court's review and no record of an answer having been filed by Riverside in this appeal, Riverside did tile an answer in the appeal filed from the judgment granting attorney's fees in favor of the plaintiff/intervenors, under this court's Docket Number 2007 CA 2175, which has not yet been formally submitted to this court for review. Nevertheless, we have reviewed the attorney's fee awarded to Riverside, bearing on the instant appeal, and find no error.
[8] Defendants' listing of witnesses for trial also included: "All witnesses listed by plaintiffs."
[9] Plaintiffs assert that during the six-year course of litigation before the trial court numerous attempts were made to have these witnesses appear for depositions to no avail.
[10] The directives of the Code of Evidence relative to prior inconsistent statements apply regardless of whether the prior statement was oral, written, or in deposition form. Thus, the provisions of LSA-C.C.P. art. 1450, governing the uses of depositions, must be read as qualified by the provisions of the Code of Evidence. LSA-C.E. art. 613, Comment (d). See also LSA-C.E. art. 403.